This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Donald Cooper, appeals from the judgment of the Medina County Court of Common Pleas, which convicted him of escape. We affirm.
 I.
{¶ 2} On April 17, 2002, Appellant was indicted on one count of escape, in violation of R.C. 2921.34(A)(1). He entered a plea of not guilty, and the case proceeded to jury trial, commencing on July 22, 2002. The jury found Appellant guilty, and the trial court sentenced him accordingly. This appeal followed.
 II. Assignment of Error No. I "The jury's decision finding the defendant guilty of trafficking in drugs [sic] is against the manifest weight of the evidence."
 Assignment of Error No. II "The court erred in overruling a criminal rule 29 motion made at the close of state's case."
{¶ 3} In his first assignment of error, Appellant asserts that his conviction is against the manifest weight of the evidence. His second assignment of error challenges the sufficiency of the evidence. We will address the assignments of error together for ease of review.
{¶ 4} We begin by noting that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring). When a defendant asserts that the conviction is against the manifest weight of the evidence,
 "An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
{¶ 5} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
{¶ 6} Appellant was convicted of escape. R.C. 2921.34(A)(1) provides that "[n]o person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention ***." "A person is under `detention,' as that term is used in R.C. 2921.34, when he is arrested and the arresting officer has established control over his person." State v. Reed (1981),65 Ohio St.2d 117, syllabus. The control necessary to establish detention need not be accompanied by physical restraint. State v. Davis (1992),81 Ohio App.3d 706, 720. Instead, "[c]ontrol may be established `either by the defendant's surrender or submission to police authority or by police exertion of control over him.'" State v. Anderson (June 16, 1999), 9th Dist. No. 19162, at 4, citing State v. Huffman (1987),38 Ohio App.3d 84, 86.
{¶ 7} The evidence presented at trial revealed the following. On March 20, 2002, Sergeant Kevin Rohrer of the Medina County Sheriff's Department went to Appellant's residence to serve an arrest warrant on Appellant and arrest him. He was accompanied by Sergeant Steve Nagy of the Hinkley Police Department. Upon their arrival at the residence, the two officers were invited into the house. It is at this point that the testimony differs.
{¶ 8} Sergeant Nagy testified that when the officers arrived at Appellant's residence, Sergeant Rohrer explained to Appellant that he had a warrant for his arrest, that he would have to arrest him and that Appellant would have to come with the officers. Sergeant Rohrer advised Appellant of his Miranda rights and told Appellant to get his shoes; however, even though Sergeant Rohrer told Appellant he was under arrest, he did not place the appellant in handcuffs.
{¶ 9} Appellant indicated that he wanted to discuss the allegations. Sergeant Nagy testified that while Sergeant Rohrer and Appellant were discussing the allegations, Appellant was walking back and forth through the living room and into the kitchen. Sergeant Nagy attempted to keep Appellant between the two officers and tried to remain in a position between Appellant and the front door. Sergeant Nagy stated that Appellant walked through the room like he was looking for his shoes, got past the officers, and ran out the front door. Sergeant Nagy testified that the officers followed him out the door; however, it was apparent that the officers would not be able to catch him. The appellant had turned into a field, and the officers knew they could not follow him through the field in their police cruisers.
{¶ 10} Sergeant Rohrer testified that after he told Appellant that he was under arrest, they discussed the details of the warrant for a few minutes. He stated that Appellant inquired as to bond. He further stated that he told Appellant that he would accompany him while Appellant looked for his shoes and that the officers would take him to jail. Sergeant Rohrer testified that he told Appellant three times that he was under arrest and that he and Sergeant Nagy had restricted Appellant's movements throughout the house by following him and trying to remain between Appellant and the door. Sergeant Rohrer stated that Appellant was walking with his head down, as if looking for his shoes, when he walked quickly to the door and ran out. Sergeant Rohrer told him to stop. The officers did not run after him.
{¶ 11} Appellant testified that at no time did Sergeant Rohrer tell him that he was under arrest, and he denied that Sergeant Rohrer read him his Miranda rights. However, when asked whether Appellant felt he was free to leave, he stated "Well, not exactly, *** I mean, no, I wasn't free." Appellant admitted that he walked out the front door and ran down the street.
{¶ 12} Rebecca Shipley and Catherine Logsdon both testified that they were present at Appellant's house when the two officers came to talk to Appellant. Neither heard the officers arrest Appellant, nor did they hear anyone discussing Miranda rights with him. However, both witnesses admitted that they left the house for a brief period in order to pay for a pizza that was being delivered. George Tomko also testified on Appellant's behalf. He stated that he was present the entire time the officers spoke with Appellant. He testified that he did not hear the officers tell Appellant he was under arrest, nor did he hear the officers read Appellant his rights. He also stated that the officers never tried to physically restrain the appellant.
{¶ 13} We find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Appellant of escape. As previously noted, the control necessary to establish detention need not be accompanied by physical restraint, but may be established by the defendant's surrender or submission to police authority or by the police exerting control over him. The jury therefore, did not lose its way, when it found that Appellant purposely broke or attempted to break detention. This is not a case where the evidence weighs heavily in favor of Appellant, meriting a reversal of the conviction and a new trial. Moreover, "when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v. Gilliam
(Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Therefore, we conclude that Appellant's conviction for escape was not against the manifest weight of the evidence.
{¶ 14} This Court has previously observed that "because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts
(Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. As we have already determined that Appellant's conviction was not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Appellant's assignments of error are overruled.
 III.
{¶ 15} Having overruled the assignments of error, we affirm the judgment of the Medina County Court of Common Pleas.
SLABY, P.J. and CARR, J. CONCUR.